## UNITED STATES FIRE ESCAPE COUNTERBALANCE CO. v. JOSEPH HALSTED CO.

(District Court, N. D. Illinois, E. D.  April 16, 1912.)

Nos. 30,586, 30,587.

MONOPOLIES (§ 21*)—COMBINATIONS—RIGHTS OF MEMBERS.

 An assignee of a patent holding under an assignment made in aid of a combination violative of the Sherman Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) may sue in equity an infringer of the patent who cannot justify his wrongful acts by attacking the assignee as an unlawful combination, since a decree establishing title in the assignee and an infringement by the infringer need not touch the question of illegal combination.

 [Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig. § 21.*]

In Equity. Suit by the United States Fire Escape Counterbalance Company against the Joseph Halsted Company. Exceptions to the substituted amendment of answer sustained.

Brown & Hopkins, of Chicago, Ill., for complainant.
Hill & Hill, of Chicago, Ill., for defendant.

SANBORN, District Judge. Exceptions to amendment to answer. An order sustaining exceptions to a part of the original answer having been made, defendant was allowed to amend, and did so, March

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

15, 1912. Exceptions being made to the amendment and heard, defendant offered a substitute amendment, and made a motion for leave to file April 10, 1912. This motion was granted, the exceptions to the amendment to stand as exceptions to the substitute. The only question is whether the assignment of a patent in aid of a combination made unlawful by the Sherman Act operates to pass title, or is to be treated as absolutely void for all purposes and in all places. May an infringer, one who unlawfully takes the property of another, defend himself on the ground that the property so taken or despoiled became vested in his adversary by an unlawful act? Is the latter to be excluded from the courts because he is himself a lawbreaker, or is his own wrongdoing to be redressed only through the remedies peculiarly applicable?

It is urged that the amendment to the answer shows that the assignment of the patent sued on was made as part of an illegal scheme to monopolize the business of dealing in fire escapes, and that defendant, though alleged to be an infringer, may therefore attack the patent transfer. Stated briefly, the substituted amendment sets out the following: Complainant does not make, use, or sell the patented devices, but is an illegal corporation in the nature of a trust to fix prices or limit output, being merely a holding company. Complainant was organized to acquire patents, and gain control of nonpatented devices, for the purpose of suppressing competition and regulating prices of fire escapes. This it does through licensees, who were engaged in making and installing fire escapes prior to complainant's organization. The business of these licensees is substantially the same as before, except that they now pay license fees to complainant. Each licensee makes a different form of fire escape. Prior to joining the combination some of the licensees had patents and others had not. The latter class had been making fire escapes not within the patent sued on, without molestation or payment of royalty, and they are still making the same styles as before, but paying license fees to complainant. The licenses were made without consideration except immunity to the licensees from competition and unjust prosecution, and the opportunity of joining others in suppressing competition and raising prices. Prior to complainant's organization, the fire escapes, both patented and nonpatented, were in competition which is now suppressed. It is alleged, as a conclusion from the facts thus stated, that complainant is an unlawful combination under the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), all its acts and contracts in furtherance of the scheme are void—

"and that any and all title to property of any nature acquired by or under any such contract or agreement in furtherance and in aid of such illegal acts, is also absolutely void and of no effect; *that the alleged assignment of the patent herein sued on to the complainant was in furtherance of and in aid of accomplishing said illegal combination;* that said assignment and this suit against this defendant, and suits against others similarly situated, are each steps in one and the same fraudulent and illegal scheme, the one being dependent upon the other for its success, to control the prices of fire escapes, to suppress competition, and to compel this defendant and other manufacturers of fire escapes who are not in said combination, to yield to the

demands of the complainant to that effect, or to drive them out of the business of manufacturing and selling fire escapes, to the manifest injury of the public and contrary to public policy under the law; *that said assignment is, therefore, illegal, void and of no force and effect to transfer title of said patent to the complainant herein;* and that the complainant therefore has no title in the patent sued on, and no title or right of any kind sufficient to found this suit upon."

By the great weight of federal authority, the infringer of a patent cannot justify his acts by attacking complainant as a trust or unlawful combination. This is simply saying, "You're another." Complainant may be an obnoxious combination, but that does not excuse defendant for appropriating its property. Such a doctrine would justify stealing stolen goods from the thief, or despoiling any real or supposed trust of all its holdings. Strait v. National Harrow Co. (C. C.) 51 Fed. 819; Edison El. Lt. Co. v. Sawyer-Man El. Co., 53 Fed. 592, 3 C. C. A. 605; Otis Elevator Co. v. Geiger (C. C.) 107 Fed. 131. In Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, Connolly bought pipe and gave notes for it, upon which the suit was brought, alleging that he ought not to pay the notes because the pipe company was an unlawful trust, and that the sale for which the notes were given was made in the ordinary business of the trust. He also claimed treble damages under the Sherman Act. The court say:

"The defense cannot be maintained. Assuming, as defendants contend, that the alleged combination was illegal if tested by the principles of the common law, still it would not follow that they could, at common law, refuse to pay for pipe bought by them under special contracts with the plaintiff. The illegality of such combination did not prevent the plaintiff corporation from selling pipe that it obtained from its constituent companies or either of them. It could pass a title by a sale to any one desiring to buy, and the buyer could not justify a refusal to pay for what he had bought and received by proving that the seller had previously, in the prosecution of its business, entered into an illegal combination with others in reference generally to the sale of Akron pipe."

The Connolly Case was an action at law, while this is in equity, and it is urged that a court of equity will not lend its aid to an illegal trust even to the extent of protecting its property rights. In other words, that an unlawful combination may be freely despoiled of its property without equitable relief, even if it can sue at law. No such distinction is made in the Connolly Case, and the Circuit Court of Appeals of this circuit held a like defense unavailing against creditors' claims presented in an equity case, in Dennehy v. McNulta, 86 Fed. 825, 30 C. C. A. 426, 41 L. R. A. 609, certiorari denied 176 U. S. 683, 20 Sup. Ct. 1026, 44 L. Ed. 638. The claims in question were for rebates made by a corporation which had been held an unlawful monopoly by the Illinois Supreme Court, and were disallowed on another ground. Moreover, the claims were based upon the contracts themselves, so the question was directly raised, and not collaterally, as in the case now under consideration. The Dennehy decision was approved in the Connolly Case, 184 U. S. 547, 22 Sup. Ct. 431, 46 L. Ed. 679. The latter case is also authority for the position that the Sherman Act does not avoid contracts made by an illegal combination unless themselves in restraint of interstate commerce.

The question of the validity of contracts of sale by an unlawful trust, made in furtherance of the combination, was examined at length in Con. Wall Paper Co. v. Voight, 212 U. S. 227, 256, 29 Sup. Ct. 280, 53 L. Ed. 486, and such a sale held void in a suit brought on the contract. The Connolly Case was distinguished on the ground that the sale there was not a part of, nor in execution of, any general plan or scheme condemned by the law. It was simply the case of a corporation selling its own goods to a stranger wishing to buy them. But in the Voight Case the sale was based upon agreements which were essential parts of an illegal scheme; the vendee having made a purchasing agreement by which sales were unlawfully restricted. Judgment for the corporation would have given effect to an illegal combination.

It is, however, argued that, even though a trespasser cannot defend his act by showing that his adversary is guilty of malum prohibitum, yet patent infringement suits stand on a somewhat different ground. A person bringing an infringement suit must show title to the patent, while the mere possessor of tangible property, though without title, may sue for trespass. Therefore, it is said, it is always open to defendant in an infringement suit to attack plaintiff's title. If he relies on an assignment, defendant may show its invalidity. A transfer, it is further argued, made in aid of unlawful combination, is absolutely void, passing no title of any kind. So the conclusion is reached that in any and all patent infringement suits defendant may raise the question of trust or no trust, good or bad trust, reasonable or unreasonable restraint of trade, whenever there was a patent transfer in aid of the combination. The United States Steel Corporation, for instance, is the owner by assignment of hundreds of patents. In all its infringement suits may defendants raise the question now in litigation by the government whether it is or is not within the Sherman Act? The question would seem to suggest the answer, to the effect that an infringement suit may be disposed of without touching the question of trust or combination, and that the court, in adjudging infringement, would not thereby approve a possible illegal combination. A patent transfer is valid to pass title, even though made pursuant to unlawful combination. A fraudulent sale is still a sale, good until set aside, and can be attacked only by some one injured. Neither grantor nor grantee may question it. It is voidable as to those intended to be injured, but good as to all others. This rule has been often recognized by the Supreme Court in ejectment and various other cases. Luhrs v. Hancock, 181 U. S. 567, 573, 21 Sup. Ct. 726, 45 L. Ed. 1005; Milwaukee & M. R. Co. v. Soutter, 13 Wall. 517, 523, 20 L. Ed. 543. "A person does not become an outlaw and lose all rights by doing an illegal act." Mr. Justice Holmes, in Nat. Bank & Loan Co. v. Petrie, 189 U. S. 423, 23 Sup. Ct. 512, 47 L. Ed. 879. "A man by committing a fraud does not become an outlaw and caput lupinum." Stoffela v. Nugent, 217 U. S. 499, 30 Sup. Ct. 600, 54 L. Ed. 856. Even though the sole inducement and consideration for the patent transfer were the expected benefits to be realized from the trust, yet this does not avoid it. "In most cases the result complained of as springing from a tort is a contract, the contract is lawful, and

the tort goes only to the motives which led to its being made, as when it is induced by duress or fraud." Chattanooga Foundry v. Atlanta, 203 U. S. 390, 397, 27 Sup. Ct. 65, 51 L. Ed. 241.

The sole value of patent property resides in monopoly. Within certain limits this monopoly may be made to extend to nonpatentable property, as just decided by the Supreme Court in Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. ——, 176 O. G. 751. If the patentee attempts still further to extend his monopoly by occupying unpatented territory, and thus brings himself within the civil and criminal provisions of the Sherman Act, he is amenable under that statute, but his property rights secured by the patent remain. He is not to be indirectly punished in an infringement suit for his breach of an independent statute.

By the amendment now under consideration, it is sought to bring the patent transfer within the Voight Case through the allegation that it was an essential part of the combination. If, in making a decree for infringement or in dismissing for want of it, it were necessary to give effect to an illegal trust, the Voight Case would apply. But a decree adjudging infringement would not do this. It would establish title in complainant and infringement by defendant, and this without touching the question of illegal combination. That question the court is not compelled to decide. If a suit were brought directly upon the patent transfer, and the defense that it was an essential part of an unlawful trust were raised, then the court would be obliged to consider that question. The transfer could not in that event be upheld without sustaining also the trust, if one really existed. Not so here. No one is before the court who has any title or standing to raise the question of trust or no trust, because the patent transfer is valid whether or not any unlawful combination in reality exists.

A somewhat analogous case is where the owner of property, or a claim to property, enters into a champertous agreement with his attorney, the latter agreeing to pay the expense of litigation on condition of sharing in the recovery. For a court to entertain the suit will inevitably give effect to the champertous contract, yet that is no reason for dismissal. The plaintiff's title or claim does not come through the unlawful bargain; hence he is free to proceed. Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 388; Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991.

The exceptions to the substituted amendment of the answer are sustained.