OTIS ELEVATOR CO. v. GEIGER et al.

(Circuit Court, D. Kentucky. March 30, 1901.)

No. 6,819.

1. PATENTS—INFRINGEMENT—DEFENSE—ANTI-TRUST LAW.

In an action for the infringement of elevator patents, a private defendant was not entitled to urge as a defense that plaintiff was a corporation organized merely for the purpose of holding the legal title to various elevator patents alleged to have been infringed, for the purpose of controlling sales and enhancing prices of elevators and apparatus, without itself engaging in the manufacture and sale of such appliances, in violation of the Sherman anti-trust law (26 Stat. 209), since, until the United States has acted and sought to prosecute the plaintiff for violation of such act, an infringer of the plaintiff's patent will not be permitted to raise such issue as a defense thereto.

2. SAME—PLEADING—INDEFINITENESS.

In an action by a corporation for the infringement of elevator patents, an answer alleging as a defense that the plaintiff is an unlawful combination in restraint of trade and in violation of the Sherman anti-trust law (26 Stat. 209), but which fails to state who are in the combination in the agreement characterized as unlawful, and does not disclose fully and in detail that the combination was entered into after the act took effect, and all the facts necessary to show its illegality, is insufficient for indefiniteness.

Bill for Infringement of Patents. On exceptions to answer. Exceptions sustained.

Brown & Darby, for complainant.
A. E. Willson and E. H. Hunter, for defendants.

EVANS, District Judge. The complainant, a corporation organized under the laws of New Jersey, in its bill charges that it is the owner, by mesne conveyances duly recorded, of certain letters patent,

which the defendants have infringed and will continue to infringe; and the usual prayer for an injunction and accounting of profits is contained in the bill. The defendant has filed an answer, the third paragraph of which is in this language:

"These defendants have no knowledge of the assignments alleged to have been made of the said letters patent, and therefore deny the same, and deny that any right or interest in the said letters patent has been acquired or is now possessed by the complainant; but, upon information and belief, these defendants aver that the complainant, the Otis Elevator Company, is a corporation or association created by the owners of several distinct patents relating to the construction and operation of elevators, for the sole purpose of restraining manufacture, controlling sales, and enhancing prices of elevators and apparatus used in connection therewith,—the Otis Elevator Company not itself engaging in the manufacture and sale of such appliances, but being merely provided to hold the legal title to the said distinct and various letters patent while the original owners thereof are licensed thereunder,—and that by reason thereof no title enforceable in a court of equity has been or is now vested in the complainant."

The complainant has filed exceptions to this paragraph, and the interesting question thereby raised is to be determined.

Possibly the act of congress approved July 2, 1890 (26 Stat. 209), and commonly known as the "Sherman Anti-Trust Law," is the only statute upon which the courts of the United States, ordinarily speaking, could adjudge such an agreement as the third paragraph of the answer describes to be void. Certainly I do not recall any other which would authorize the courts of the United States to declare a state corporation to be unlawful ab initio, as a prohibited combination. We may probably assume that prior to July 2, 1890, there was no law of the United States which provided that such combinations should be invalid. But the act of that date, by its terms, is made to operate only through the penalties which are therein prescribed, or through the direct proceedings which it authorizes the United States to institute to declare certain prohibited arrangements void, or by giving any person who is injured in his business the right to recover multiplied damages, though, in addition, while these statutory remedies, being the ways expressly prescribed for enforcing the act, are otherwise exclusive, it may be quite true that the policy of the United States, as manifested by this legislation, would authorize the courts of the United States, upon more general principles, to refuse to enforce, as between the parties thereto, such combinations as are denounced by this legislation. But, as matter of pleading, it seems to the court that until the United States has acted it does not lie in the mouth of a mere infringer to urge any of these objections as matter of defense to a suit for infringement, and thus divert attention from his own wrongful acts by raising an independent and altogether collateral issue as to the manner in which the complainant acquired title to the patent alleged to have been infringed. If the paragraph showed that the United States, by a direct proceeding in its courts, had already caused the alleged agreement to be adjudged void, though the complainant possibly in that event could not recover for the infringement complained of, the real owner of the patent, whose assignment to the complainant might thus be shown to have been void, could do so. A judgment in this case in favor of this complainant

before such proceedings as have been referred to had taken place, would, through the recorded deed of assignment, protect the defendant against another suit by the assignor for the same cause of action, and it therefore seems to the court that the only legitimate issues pertinent to the charge of infringement are very different from the one sought to be raised in paragraph 3 of the answer. It might, indeed, be quite possible for the general objects of the alleged combination to be unlawful, and such as could be enjoined at the suit of the United States, without necessarily affecting other special acts, such as a conveyance to the complainant of the patent. And, as there is no doubt that the conveyance of this patent was in fact made and recorded, it seems to the court that the defendant, under those circumstances, and in an action of this character, cannot be allowed to question the title of the complainant to the patent upon this ground, and the weight of the authorities supports this view. The apparent conflict in the decisions may be somewhat reconciled by ascertaining whether the suits in which they were rendered grew out of contracts or out of torts, as in the former case they may approach nearer the line where the act of congress might operate upon them than in the latter. Chief upon one side of the question are the decisions in the cases of Strait v. Harrow Co. (C. C.) 51 Fed. 819; Edison Electric Light Co. v. Sawyer-Man Electric Co., 3 C. C. A. 605, 53 Fed. 598; Soda-Fountain Co. v. Green (C. C.) 69 Fed. 334; Saddle Co. v. Troxel (C. C.) 98 Fed. 620. And upon the other side are the cases of Harrow Co. v. Hench, 27 C. C. A. 349, 83 Fed. 36, 39 L. R. A. 299; Id. (C. C.) 76 Fed. 667; Harrow Co. v. Quick (C. C.) 67 Fed. 130. The first of the last three cases named, it will be observed, was one in which a portion of the contract was sought to be enforced by certain of the parties to the illegal combination, and the court doubtless thought (though it does not very clearly appear from the opinion precisely what relief had been invoked) that, as their contract was vicious, it would leave the parties as it found them, and decline to enforce the agreement. But it is conceived that very different principles would apply to parties who sought to enforce portions of the vicious contract from those which would apply to a case like the one before us.

But, whether these views of the court are correct or not, there are certain rules of pleading which apply to paragraph 3 of the answer which must control the action of the court upon the exceptions, because its allegations are too vague and inexplicit, even if another view should be taken of the main question argued upon the exceptions. The paragraph in no way states who are in the combination with the complainant in the agreement characterized as unlawful. Such a defense, if maintainable, should very explicitly and exactly show how the complainant is an unlawful association, giving all the necessary particulars, in order that the complainant can know precisely what it is to meet, and so that the court can determine whether all the rights of the complainant to protect its claim to a patent have been forfeited, ipso facto, the entering into such an association; and the averments of the answer should be made in such clear terms as to show that the defendants, under the law and upon the facts they state, can thereby defeat an action against them which might otherwise be

meritorious. The court should take nothing for granted in such a case, and the pleading should disclose fully and in detail not only that the combination was made after July 2, 1890, but all the facts necessary to show the illegality of the association. And the fact that the complainant is a corporation organized under the laws of a state may make these requirements all the more exacting and emphatic.

The initial statements in the paragraph, being mere denials, are sufficient; but from either point of view the court is of opinion that the exceptions to the third paragraph of the answer should be allowed so far as they apply to those parts of the paragraph beginning with the words, "But, upon information and belief, these defendants aver that the complainant, the Otis Elevator Company, is a corporation or association created by the owners of several distinct patents relating," etc., and continuing to the close of the paragraph. An order can be prepared accordingly.